UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

McKESSON INFORMATION
SOLUTIONS, INC.,

        Plaintiff,

   v.

BRIDGE MEDICAL, INC.,

        Defendant.

NO. CIV. S-02-2669 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

    This matter is before the court on the parties' cross-motions for summary adjudication of defendant Bridge's Medical Inc.'s ("Bridge") affirmative defense of inequitable conduct.[1] By that defense, Bridge seeks a finding that the subject patent[2] held by plaintiff McKesson Information Solutions, Inc. ("McKesson") is unenforceable for inequitable conduct in

---

[1] Bridge also moved for summary adjudication of its counter-claim for declaratory relief on the same grounds. (Amd. Counter-Compl., filed July 16, 2003.)

[2] U.S. Patent No. 4,857,716 ("the '716 patent")

prosecuting the patent before the Untied States Patent and Trademark Office ("PTO").

For the reasons set forth below, both parties' motions are DENIED.[3] Triable issues of fact remain regarding the materiality of the non-disclosures and the apparent intent to deceive the PTO. As such, Bridge's defense/counter-claim for inequitable conduct may not be resolved on summary adjudication.

**BACKGROUND**

The '716 patent inventors were represented before the PTO by attorney Michael D. Schumann ("Schumann") in their effort to secure the '716 patent, covering a Patient Identification and Verification System and Method. (Bridge's Resp. to McKesson's Stmt. of Undisp. Facts ("RUF"), filed July 15, 2005, ¶ 1.) While the '716 application was pending, Schumann also filed and prosecuted a series of related ("co-pending applications"), including the applications that ultimately became U.S. Patent No. 4,835,372 to Gombrich *et al.* ("the '372 patent"), U.S. Patent No. 4,850,009 to Zook *et al.* ("the '009 patent"), and U.S. Patent No. 4,916,441 to Gombrich ("the '441 patent"). (Bridge's Stmt. of Disputed Facts ("DF"), filed July 15, 2005, ¶ 45.)

According to Bridge, the '372 and the '716 patent applications covered nearly identical subject matter and involved very similar claims, yet Schumann did not refer the '716 patent examiner to the notice of allowance of the '372 patent. (DF ¶ 46.) However, Schumann did, in response to a rejection of the

---

[3] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

2

1  pending claims in the '716 application, twice inform the examiner
2  of the '372 *application*.  (RUF ¶ 9, 14.)  Ultimately, the '372
3  patent issued before the '716 patent.  (DF ¶ 47.)

4      Bridge also maintains that the '009 and '716 patent
5  applications prosecuted by Schumann were substantially similar,
6  each describing and claiming a "portable handheld terminal" with
7  a "display means," "keyboard means," and "electromagnetic
8  transceiver means" used with a "base station."  Specifically, the
9  '009 patent--from column 5, line 63 through column 15, line 57--
10 has the identical disclosure, word for word, as the disclosure of
11 the '716 patent--from column 22, line 37 to column 30, line 11.
12 (DF ¶ 49.)  On February 26, 1987, the '009 examiner rejected all
13 claims of the '009 patent application and notified Schumann of
14 the rejection.  Among others, claims 15, 16, and 18, of the '009
15 application were, Bridge asserts, substantially similar to claim
16 1 of the '716 patent, and the rejection for obviousness of those
17 claims was based on references the '716 examiner was considering.
18 (DF ¶ 51.)  Yet, Schumann did not notify the '716 examiner of
19 this rejection.  (DF ¶ 52.)  Thereafter, a second rejection was
20 entered December 1, 1987 for '009 claims 1-24; again, Bridge
21 asserts that '009 claims 20 and 22-24, also rejected for
22 obviousness, bore a substantial similarity to claim 1 of the '716
23 patent, although Schumann did not inform the '716 examiner of
24 this rejection either.  (DF ¶s 53, 54.)

25     While Schumann did not disclose these rejections of the '009
26 application, he did disclose on two occasions to the '716
27 examiner, the *existence* of the '009 application.  (RUF ¶s 6, 7,
28 8.)

3

1    Next, Schumann disclosed U.S. Patent No. 4,456,793 to Baker
2 *et al.* ("the '793 patent") to the '009 and '441 examiners but
3 failed to disclose it to the '716 examiner.  Bridge asserts the
4 '793 patent involved a three node wireless communication system
5 involving the features of the '716 patent.  However, in
6 prosecuting the '716 application, Schumann argued to the
7 examiner, in order to overcome a rejection, that the prior art
8 did not disclose such a system.  (DF ¶s 55, 56.)[4]

9    Finally, Schumann submitted to the '441 examiner at least
10 six references that could have served as prior art to the '716
11 patent, but Schumann did not disclose them to the '716 examiner.
12 (Sheridan Opp'n Decl., filed July 15, 2005, authenticating Expert
13 Rpt. [Docket Item 353] at 15.)

14    Schumann has no explanation for these failures to disclose;
15 at deposition, he declared a foggy memory.[5]  (DF ¶ 59.)

**STANDARD**

17    Summary judgment is appropriate when, based on the record,
18 no genuine issue exists as to any material fact, and the moving
19 party is entitled to judgment as a matter of law.  Fed. R. Civ.

---

[4] The court denies McKesson's request to preclude Bridge from relying on this theory for its inequitable conduct defense on the basis of untimely disclosure.  As aptly demonstrated in Bridge's opposition to McKesson's motion, Bridge disclosed this theory as early as its first amended answer and counterclaim filed July 16, 2003 (para. 24), if not at the latest, in its interrogatory responses in May 2004.  Moreover, there has been no prejudice to McKesson in responding to this theory even if it was disclosed at the latest in May 2004; Bridge's expert discussed the theory extensively in his expert report filed December 6, 2004; McKesson subsequently filed rebuttal expert reports thereto, and Bridge's expert was deposed on March 2, 2005.  There is no basis to preclude Bridge from asserting this theory.

[5] Also, he has not submitted a declaration on the motions.

4

P. 56(c).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could find in favor of the nonmoving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

When evaluating a motion for summary judgment, the court views the evidence through the prism of the evidentiary standard of proof that would pertain at trial on the merits.  <u>Id.</u> at 255. Under the patent statutes, a patent enjoys a presumption of validity (35 U.S.C. § 282) which can be overcome only through clear and convincing evidence.  <u>Eli Lilly & Co. v. Barr Laboratories, Inc.</u>, 251 F.3d 955, 962 (Fed. Cir. 2001).  "Thus, a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise."  <u>Id.</u> Alternatively, a moving party seeking a finding of no invalidity must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent.  <u>Id.</u>  "In determining whether a genuine issue of material fact exists, the court views the evidence in the light most favorable to the nonmoving party and resolves all doubts in its favor."  <u>Id.</u>

**ANALYSIS**

To establish that the '716 patent was obtained through an act of inequitable conduct, Bridge bears the burden to prove by clear and convincing evidence two elements:  First, it must show an affirmative misrepresentation of a material fact, the failure to disclose material information, or the submission of false

5

material information. <u>Life Techs., Inc. v. Clontech Labs., Inc.</u>, 224 F.3d 1320, 1324 (Fed. Cir. 2000). Under the pre-1992 standard in place at the time, information was considered material "if there [was a] 'substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.'" <u>Halliburton Co. v. Schlumberger Tech. Corp.</u>, 925 F.2d 1435, 1440 (Fed. Cir. 1991) (*quoting* 37 C.F.R. § 1.56 (1989)). But information or prior art is not material if it is cumulative to other information or art that is already before the examiner. <u>Regents of the University of California v. Eli Lilly & Co.</u>, 119 F.3d 1559, 1574-75 (Fed. Cir. 1997).

Second, Bridge must prove that Schumann acted with intent to deceive the PTO. <u>Life Techs.</u>, 224 F.3d at 1324. Thus, a good faith mistake or error does not constitute inequitable conduct, nor is it sufficient to merely show that Schumann was grossly negligent. <u>Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.</u>, 863 F.2d 867, 877 (Fed. Cir. 1988). Indeed, Bridge must show that Schumann actually intended to mislead the PTO. <u>Speedplay, Inc. v. Bebop, Inc.</u>, 211 F.3d 1245, 1259 (Fed. Cir. 2000) (finding that "[t]he omission must be made with the specific intent to mislead, not merely from carelessness in the performance of a duty").

However, the Federal Circuit has recognized that direct evidence of intent to deceive the PTO is difficult to obtain, and therefore it has found that intent to deceive can be inferred based upon the totality of the circumstances. <u>See e.g.</u>, <u>Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.</u>, 326 F.3d 1226,

6

1239 (Fed. Cir. 2003) (an intent to deceive is properly inferred when a "patent applicant knew, or should have known, that withheld information could be material to the PTO's consideration of the patent application"); Molins PLC v. Textron, 48 F.3d 1172, 1180 (Fed. Cir. 1995) ("Intent is . . . most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor."); Paragon Podiatry Lab., Inc. v. KLM Lab., 984 F.2d 1182, 1192 (Fed. Cir. 1993) ("A party charging inequitable conduct may make a prima facie case by showing an unexplained violation of the duty of candor.")

Once threshold levels of both materiality and intent have been established, they are weighed to determine if the patent should be held unenforceable for inequitable conduct. "In making this determination, the court must conduct a balancing test between the levels of materiality and intent, with a greater showing of one factor allowing a lesser showing of the other." Life Techs., 224 F.3d at 1324.

**1.   Materiality**

Through the declaration of its expert, James A. Sheridan ("Sheridan"), Bridge argues the materiality of Schumann's non-disclosures, namely: (1) the notice of allowance of the '372 patent; (2) the rejections in the '009 patent application; (3) the '793 patent; and (4) prior art references from the '441 patent application. With respect to each non-disclosure, McKesson offers a contrary opinion, of "no materiality," through its expert, Thomas Smegal ("Smegal"). Materiality is a "questio[n] of fact that must be proven by clear and convincing evidence." Dayco Prods., Inc. v. Total Containment, Inc., 329

F.3d 1358, 1362 (Fed. Cir. 2003). At the summary judgment stage, the court must decide whether the evidence relating to materiality makes the "fact reasonably inferable either way, or whether the evidence is so one-sided that the factual issue of [materiality] may be decided as a matter of law." Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1190 (Fed. Cir. 1993). As the competing declarations of Sheridan and Smegal make abundantly clear,[6] the question of materiality could be decided in favor of *either* party, and therefore summary adjudication of the issue is inappropriate. Id. ("'If the facts of materiality [or intent] are *reasonably* disputed, the issue [of inequitable conduct] is not amenable to summary judgment.'") (emphasis in original) (citation omitted). A brief summary of some of their relevant opinions demonstrates this point.

First, with regard to the failure to disclose the notice of allowance of the '372 patent, Sheridan asserts that the information was highly material because it implicated

---

[6] The court notes that it is mystified as to why the parties filed the instant motions. The parties, and certainly their lawyers, must have been well aware of the conflicting expert opinions on this issue as these experts were previously disclosed, filed expert reports, and were deposed. Yet, in the face of the experts' opinions, cross-motions for summary judgment were filed with little, if not no, attempt to discredit the opposing expert's opinion. Indeed, no formal objections, seeking the exclusion of the expert's opinions, were filed by either party. How either side believed it could prevail on its motion absent such a successful effort is unclear to the court. Instead, it appears from the utterly voluminous papers filed on the motions that the parties believed they could "hide" the triable issues in the heaps of paper. However, as this order makes clear, the volume of paper cannot disguise the "battle of experts" present in this case which clearly prevents an award of summary adjudication.

8

patentability in that it could have generated a double-patenting rejection for the claims of the '716 patent. (Sheridan Decl., filed July 1, 2005, ¶ 34.) In rebuttal, Smegal challenges Sheridan's conclusion on the basis that he has failed to adequately demonstrate the similarity between the '372 and '716 patent *claims*; according to Smegal, while the two patent applications may have involved similar subject matter, the claims themselves were not similar. (Smegal Decl., filed July 15, 2005, ¶s 59, 61) Therefore, Smegal does not agree that revelation of the '372 notice of allowance could have served as a basis for a double-patenting rejection.[7]

Second, regarding the rejections of claims in the '009 application, Sheridan finds them material because some of the rejected claims were substantially similar to at least claim 1 of the '716 patent, and the rejections were based on references the '716 examiner was considering. Accordingly, Sheridan concludes "[h]ad [the '716 examiner] been informed of [the] rejections he could have considered the particular combination relating to patentability found conclusive by [the '009 examiner]." (Sheridan Decl., ¶ 37.) Again in rebuttal, Smegal challenges Sheridan's conclusion that the rejected claims in the '009 application were similar to claim 1 of the '716 patent, finding

---

[7] Additionally, McKesson's discussion of <u>Dayco Prods.</u> on this point, concerning failure to notify an examiner of the existence of co-pending applications, is inapposite. Bridge does not argue here that Schumann failed to disclose the mere existence of the '372 application; rather, its claim is based on Schumann's failure to disclose the *issuance* of substantially-similar claims that could have given rise to a rejection based on double-patenting. Thus, <u>Dayco</u>'s holding that disclosure of a co-pending application is direct evidence pointing away from an intent to deceive the PTO is not controlling of the issue here.

9

instead a dissimilarity among the claims, and thus a lack of materiality.  (Smegal Decl., ¶ 64-65.)[8]

Third, Sheridan finds the '793 patent "highly pertinent prior art to the '716 patent" because it discloses a "three node wireless communication system employing 'a radio transmission link between a portable hand-held unit and a fixed base station unit.'" (Sheridan Decl., ¶ 40.)  It was thus prior art inconsistent with Schumann's arguments regarding patentability of the '716 application, and accordingly, it was material information.  (Id. at ¶ 40.)  Smegal responds that even assuming the '793 patent was inconsistent with Schumann's arguments in favor of patentability, Schumann was not required to disclose it because it was cumulative of other art he disclosed.  (Smegal Decl., ¶ 54 ["[I]t is my understanding, based on the analysis by McKesson's technical expert Dr. Harry Bims, that the ['793 patent] is less relevant than other art cited to the Examiner and merely cumulative to art already of record in the '716 patent."].)  In contradiction, Bridge's technical expert, Dr. Lawrence Fagan, finds the '793 patent non-cumulative, concluding that the '793 patent discloses elements of the '716 patent that

---

[8] The parties and their respective experts also dispute whether at the time (1989), Schumann had a duty to disclose such information.  Bridge maintains that he did, and McKesson asserts that such a duty did not exist until the Federal Circuit issued its opinion in Dayco Prods. in 2003.  The court disagrees with McKesson's reading of Dayco Prods.  In Dayco Prods., the court simply stated that it "had never addressed whether the prior rejection of a substantially similar claim in a copending United States application is material;" it did not make that finding in the first instance.  Rather, it applied the duty to disclose such information, as embodied in 37 C.F.R. § 1.56(b)(2), to conduct that had occurred more than a decade earlier.  As such, Dayco Prods. is not dispositive of the materiality of this non-disclosure.

10

are not found in the disclosed references.  (Fagan Opp'n Decl., filed July 15, 2005, ¶ 35; see also Sheridan Decl., ¶ 43.)

Finally, Sheridan finds, in particular, that two of the six references disclosed to the '441 examiner were material to the '716 application, namely, the '470 patent and the related '120 patent.  Specifically, Sheridan states that the '470 patent was material because it disclosed that many industries had begun to use bar codes and that there was a need for lightweight portable bar code scanners.  This information would have important to the '716 examiner, according to Sheridan, because portability was alleged to be a point of distinction for the '716 patent. (Sheridan Opp'n Decl., Exp. Rpt. at 15-16.)  For example, the '470 patent notes that "[m]any industries . . . have begun to designate their products with a unique bar code symbol consisting of a series of lines and spaces of varying widths;" it then proceeds to claim a bar code scanner "which is so light-in-weight and small-in-volumne, that it can be easily held in a user's hand without causing arm-and wrist-fatigue, while being easy to manipulate . . ." and "supportable entirely by a user during symbol reading."  (Id.)

Smegal responds that this reference was cumulative of others provided by Schumann to the '716 examiner.  Indeed, Schumann disclosed numerous patents and articles regarding the expanding usage of bar codes in various industries, including the health care industry.  (Dickerson Decl., filed July 1, 2005, Exs. HH, II, JJ, BB; Smegal Decl., ¶ 57, 58.)

Clearly, this discussion makes evident that triable issues of fact remain regarding the materiality of the subject non-

11

disclosures, thereby preventing an award of summary judgment in either parties' favor. See e.g., Aventis Pharma Deutschland GMBH v. Cobalt Pharmaceuticals, Inc., 355 F. Supp. 2d 586, 594-96 (D. Mass. 2005) (competing expert testimony raised reasonable dispute as to materiality and intent making inequitable conduct defense not amenable to summary judgment). While Bridge has not demonstrated materiality by clear and convincing evidence sufficient to prevail on its motion, the court cannot find that no reasonable trier of fact would believe its evidence and find in its favor. Ultimately, after an opportunity to weigh the credibility of the witnesses, the trier of fact[9] may conclude that Bridge has proved the requisite materiality of the non-disclosures. Therefore, McKesson's motion likewise cannot succeed.

**2. Intent to Deceive**

For the same reasons as above, triable issues of fact remain regarding whether Schumann intended to deceive the PTO, thus further preventing an award of summary judgment in either parties' favor. As with materiality, the parties' experts, Sheridan and Smegal, have differing opinions on whether Schumann can be found to have intended to deceive the PTO by his non-disclosures.

Before summarizing those opinions, the court notes that Schumann's failure to explain the non-disclosures via his

---

[9] On this issue, the parties agree the trier of fact, on this issue, is the court. Ulead Systems, Inc. v. Lex Computer & Management Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003) ("Although inequitable conduct is a matter for the court, rather than the jury to resolve, summary judgment is inappropriate if there are genuine issues of material fact.")

deposition or by declaration does not affect resolution of the motions.  Bridge incorrectly argues that Schumann's lack of "a credible, good faith explanation" for his conduct *mandates* a finding of intent to deceive.  Bruno Indep. Living Aids, Inc., 349 F.3d 1348, 1350 (Fed. Cir. 2005).  While the Federal Circuit has found such a fact *supportive* of a finding of intent to deceive, it has not found the fact determinative of the issue, nor has it, as McKesson points out, *required* the prosecuting attorney to provide such an explanation in order to withstand a finding of intent to deceive.  Id. at 1354-55.  Indeed, it is not McKesson's burden to prove *a lack* of intent to deceive.  It is Bridge's burden to *establish* intent to deceive.  Here, unlike Bruno, where the court found no credible evidence of the prosecuting attorney's apparent explanation for the non-disclosure, there is evidence of Schumann's purported intent through the declarations of Sheridan and Smegal.  However, as set forth below, because that evidence is conflicting and makes the issue of intent to deceive "reasonably inferable either way," an award of summary judgment is not permissible.

For example, Sheridan supports his opinion that an intent to deceive can be inferred from the following facts: (1) Schumann served as counsel for all four co-pending applications; (2) the '372 and '716 patents shared the same parent and grandparent applications; (3) the '372 and the '716 patent applications covered nearly identical subject matter and involved very similar claims; (4) the '009 and '441 applications contained substantially similar specifications to the '716 application; (5) the rejections in the '009 application were based on references

13

the '716 examiner was considering; (6) the '793 patent involved a three node wireless communication system involving the features of the '716 patent.  (Sheridan Decl., ¶ 44.)  According to Sheridan, under these facts, Schumann's failure to disclose the subject information "could not have been unintentional," or at minimum, supports a finding that Schumann "should have known" that the information was material.  Either way, the facts "warrant an inference that the failure to disclose was intentional."  (Id. at ¶s 44, 46.)

Precisely to the contrary, Smegal "disagree[s] with [Sheridan]" that an intent to deceive can be inferred because, according to Smegal, the facts do not support such a finding. (Smegal, ¶ 67.)  Instead, Smegal finds that because the subject information was not "material" to the inquiry, as set forth above, an intent to deceive cannot be inferred.  (Id. at 67-69.) For example, Smegal believes Schumann's disclosure of the *existence* of the co-pending '372 application to the '716 examiner demonstrates a lack of intent to deceive, despite the admitted failure to disclose the notice of allowance of the '372 application.  (Id. at ¶ 68.)  He further maintains that the failure to disclose certain action in the '009 application to the '716 examiner does not reveal an intent to deceive because like the '372 application, Schumann did disclose the '009 application itself to the '716 examiner.

Again, as with materiality, the parties' experts dispute whether an intent to deceive can be properly inferred from the facts.  That dispute cannot be resolved herein where the court is confined by the mandates of Rule 56 of the Federal Rules of Civil

Procedure.  This issue is simply not amenable to resolution on summary judgment.  Rather, the trier of fact must determine the weight to be given the respective experts' opinions and to adjudge the ultimate persuasiveness of their opinions.

**CONCLUSION**

For the foregoing reasons, the parties' cross-motions for summary adjudication of Bridge's affirmative defense/counter-claim for unenforceability of the subject patent on the basis of inequitable conduct are DENIED.

IT IS SO ORDERED.

DATED: August 10, 2005.

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE