UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

McKESSON INFORMATION
SOLUTIONS, INC.,

        Plaintiff,

   v.

BRIDGE MEDICAL, INC.,

        Defendant.

NO. CIV. S-02-2669 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on plaintiff McKesson Information Solutions, Inc.'s ("plaintiff") motion to re-open discovery pursuant to Federal Rule of Civil Procedure 16(b).[1] Arguing said relief is necessary because of recently discovered evidence, plaintiff seeks an order (1) requiring defendant Bridge Medical, Inc. ("defendant") to supplement certain of its responses to plaintiff's interrogatories and document requests;

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

(2) permitting plaintiff to depose additional fact witnesses relevant to this newly-discovered evidence; and (3) permitting plaintiff to update its expert reports on the issues of infringement and damages based on this new discovery. Defendant opposes the motion, arguing there is no newly discovered evidence and its prior discovery responses remain complete and accurate.

For the reasons set forth below, plaintiff's motion to re-open discovery is DENIED. Evidence relating to Sutter Health is not newly discovered and even if it were, and to the extent there may be other newly discovered evidence, pertaining to other hospitals allegedly using the accused "MedPoint System" on handheld or unmounted devices, at this late juncture in the case, good cause does not exist to re-open discovery.

**BACKGROUND**

Throughout the course of discovery, plaintiff sought information from defendant about how defendant's customers used the accused "MedPoint System." Defendant responded to those requests indicating that all, but two of its customers, Lancaster General Hospital and Children's Hospital of New Orleans, used its MedPoint software on computers mounted on carts and/or walls. After the close of discovery, plaintiff found a June 10, 2005 article on defendant's website that described the use of the "MedPoint System," at Sutter Health hospitals in Sacramento, California. The article states:

> Sutter clinicians either carry devices from room to room or use more traditional machines on carts. Which device they use depends on whether a clinician stays in particular department or makes rounds throughout the hospital. 'If a physician or nurse needs to walk around, we'll give them a tablet. If they're more stationary, we'll put them on a cart.'

2

(Hall Decl., filed Feb. 21, 2006, Ex. B at 4, *quoting* former Sutter Health Chief Information Officer John Hummel.)  On January 26, 2006, plaintiff requested that defendant supplement its discovery responses in light of the information in the article. Defendant refused, stating supplementation was not necessary because:

> [S]utter hospitals do not operate Bridge's MedPoint software on unmounted computers.  To be sure, all sorts of computing devices can be found in use at the Sutter hospitals, as is documented in the [above article]. However, the bar code-enabled point of care system used by the Sutter hospitals last year, and also as of today, employ computing devices which are mounted to mobile stands or fixed in each room.

(Id. at Ex. C.)

Plaintiff then contacted Mr. Hummel, who is not currently employed by Sutter Health and is working in Texas.  Plaintiff states Mr. Hummel "confirmed" that Sutter Health hospitals have used the "MedPoint System" with unmounted TabletPC computers and, that he personally witnessed such uses at three Sutter Health hospitals as recently as March or April 2005.  (Id. at ¶s 7-8.)

On January 30, 2006, defendant contacted Sutter personnel who it asserts confirmed that all Sutter sites are operating MedPoint on computing devices mounted to mobile stands or affixed to the wall in patient rooms.  Additionally, after plaintiff filed the instant motion, defendant contacted Julie Cooper, Sutter Health's Senior Technical Project Manager, responsible for implementing MedPoint at Sutter, who defendant states confirmed that handheld and tablet computers are not used to operate MedPoint at any Sutter facility. (Patiño Decl., filed Mar. 1, 2006, at ¶ 4.)

3

**STANDARD**

A pretrial order "shall not be modified except upon a showing of good cause." Fed. R. Civ. P. 16(b).[2] The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (quoting Fed. R. Civ. P. 16, advisory committee's notes (1983 amendment)). The "good cause" standard set forth in Rule 16 primarily focuses upon the diligence of the party requesting the amendment. "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." Id.

The moving party may establish good cause by showing "(1) that [he or she] was diligent in assisting the court in creating a workable Rule 16 order; (2) that [his or her] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [his or her] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference; and (3) that [he or she] was diligent in seeking amendment of the Rule 16 order, once it became apparent that [he or she] could not comply with the order." Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999) (citations omitted).

---

[2] All further references to a "Rule" are to the Federal Rules of Civil Procedure.

4

**ANALYSIS**

Clearly, the parties dispute whether Sutter Health has employed or is presently employing the MedPoint software on unmounted point of care devices. Resolution of that issue, however, is not necessary to this motion. The question under Rule 16(b) is whether plaintiff was diligent in seeking discovery from Sutter Health. If plaintiff was not diligent, "the inquiry should end." Johnson, 975 F.2d at 609.

Here, plaintiff argues it was diligent because it was not aware of Sutter Health's relevance to this action until it reviewed the June 2005 article on defendant's website. However, plaintiff does not oppose defendant's proffer on the motion, that nearly 2,000 documents were produced during discovery regarding the selection, installation, and use of the MedPoint software at Sutter Health. (Patiño Decl., ¶ 2.) Sutter Health is the only MedPoint customer within this district, *plaintiff's* chosen forum. Several of the produced documents specifically quote or reference Mr. Hummel. (Id. at Exs. C & D.) Additionally, one document, an email from Ms. Cooper, stated that Sutter Health "is not pursuing tablets as a standard" for the MedPoint software. (Id. at Ex. A.)

Despite the above, plaintiff did not depose Mr. Hummel or Ms. Cooper or a Sutter Rule 30(b)(6) deponent during discovery, which was open for almost two years. Only now, more than a year after discovery closed on February 28, 2005, does plaintiff move for discovery regarding Sutter Health's use of the MedPoint software. Indeed, though becoming aware of the alleged new information in June 2005, plaintiff did not request the instant

5

relief from the court until the time of the final pretrial conference on March 10, 2006. Plaintiff offers no explanation for this eight-month delay. Under these circumstances, good cause to re-open discovery does not exist.

Moreover, the court notes that even if plaintiff were factually correct that it was "duped" by defendant into believing that only mounted point of care devices were used at Sutter Health for MedPoint,[3] that fact would not justify re-opening discovery at this last juncture in the case (motions in limine are to be filed in two weeks and the bifurcated court trial is set to commence May 2, 2006), where plaintiff was not diligent in seeking relevant discovery from Sutter Health. Conkle v. Jeong, 73 F.3d 909, 914 (9th Cir. 1995) (the court rightly denies "'further discovery if the movant has failed diligently to pursue discovery in the past'").

Additionally, also weighing in the court's analysis is the fact that Sacramento-based Sutter Health is within the subpoena power of the court. Should plaintiff seek to offer its claimed "new" evidence, it may call Sutter Health at trial.[4]

Finally, plaintiff raises for the first time in its reply, that it has discovered two other customers of defendant that have used unmounted computers with the MedPoint software, Jewish Hospital in Kentucky, who has used unmounted Hitachi TabletPCs (Vandall Reply Decl., filed Mar. 6, 2006) and Vassar Brothers

---

[3] The court, however, does not make any such findings herein.

[4] While Mr. Hummel is outside the subponea power of the court, his presence would appear to be of less importance as he is no longer employed at Sutter Health.

Medical Center in New York, who has used unmounted Symbol PDAs (LeMay Reply Decl., filed March 6, 2006). Because these new facts were provided only in the reply, they are not properly considered by the court on the motion. Eberle v. City of Anaheim, 901 F.2d 814, 818 (9th Cir. 1990) (movants may not raise new issues or facts for the first time in their reply briefs); Sweet v. Pfizer, 232 F.R.D. 360, 364 n. 6, 7 (C.D. Cal. 2005) (considering plaintiffs' reply brief on motion for class certification only to the extent it did not "raise new issues or introduce new information").

However, even were the court to consider such purported evidence, it does not, for the same reasons as set forth above, justify the re-opening of discovery. Again, plaintiff offers no explanation for why it only *recently* discovered this evidence such that it should be permitted additional time for discovery. The law assumes that parties will continue their investigation for impeachment materials in preparation for trial, which plaintiff is apparently doing. Rice v. United States, 164 F.R.D. 556, 557 (N.D. Okla. 1995). However, that continued investigation beyond the discovery deadline is not grounds to re-open formal discovery. Integra Lifesciences I, Ltd. v. Merck KGaA, 190 F.R.D. 556, 560 (S.D. Cal. 1999) (denying request for a further deposition on ground that "[w]hile it is certainly permissible for a party to continue its formal investigation of facts underlying claims in a case after the expiration of the discovery period, [the] attempt to engage in formal discovery is improper"). Certainty and efficiency of the trial process are gained from the enforcement of discovery deadlines, and under the

facts here, there is no basis to depart from those deadlines.

As for either parties' obligations under Rule 26(e) to amend and/or supplement any previous discovery responses based on newly discovered evidence, those obligations are in place regardless of any order of the court on this motion, which is limited to the issue of grounds to re-open formal discovery based on plaintiff's diligence in seeking such relief.  To the extent any information brought to light by this motion requires defendant to amend or supplement its previous discovery responses, Rule 26(e) is self-enforcing and defendant is bound to follow it.  Nevertheless, that supplementation of discovery responses may be necessary does not require or dictate the re-opening of formal discovery.  Were that true, discovery in any case would likely never close.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to re-open discovery pursuant to Rule 16(b) is DENIED.

IT IS SO ORDERED.

DATED: March 13, 2006.

>    /s/ Frank C. Damrell Jr.
>    FRANK C. DAMRELL, Jr.
>    UNITED STATES DISTRICT JUDGE