1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11                          ----oo0oo----

12

13  McKESSON INFORMATION
    SOLUTIONS, INC.,

14                                    NO. CIV. S-02-2669 FCD KJM
              Plaintiff,

15

16       v.                          MEMORANDUM AND ORDER

    BRIDGE MEDICAL, INC.,

17
              Defendant.

18

19                          ----oo0oo----

20       This matter is before the court on plaintiff McKesson

21  Information Solutions, Inc.'s ("plaintiff") motion to join Cerner

22  Corporation ("Cerner") as a defendant to this action under

23  Federal Rule of Civil Procedure 25(c).[1]  Plaintiff argues said

24  joinder is appropriate because Cerner is now the owner of the

25  accused "MedPoint System" pursuant to the sale of substantially

26  all of defendant Bridge Medical, Inc.'s ("defendant") assets to

27

28       [1]   Because oral argument will not be of material
    assistance, the court orders this matter submitted on the briefs.
    E.D. Cal. L.R. 78-230(h).

1  Cerner.  As a result of this "transfer of interest," which

2  plaintiff maintains left defendant as nothing more than a "shell

3  company," the joinder of Cerner, plaintiff argues, is required to

4  grant it full relief in this case.

5     Both defendant and Cerner oppose the motion, arguing

6  Rule 25(c) is inapplicable here as Cerner is not a successor in

7  interest within the meaning of Rule 25 and even if Rule 25(c) is

8  applicable, the court, in its discretion, should deny joinder at

9  this late stage of the litigation.

10    For the reasons set forth below, the court DENIES

11  plaintiff's motion to add Cerner as a defendant.

                            **BACKGROUND**

13    In mid-June 2005, defendant and Cerner reached an agreement

14  under which defendant would sell substantially all of its assets

15  to Cerner.  (Chou Decl., filed Mar. 1, 2006, ¶ 2.)[2]  Press

16  releases were issued on June 16, 2005, and the transaction was

17  major news in the healthcare information technology industry, of

18  which plaintiff is a significant member.  The transaction closed

19  on July 7, 2005, and defendant has not made, used, sold, or

20  offered for sale its MedPoint software since that time.  (Id.)

21    In the transaction, Cerner did not assume the liabilities of

22  defendant for its acts prior to the sale of the accused MedPoint

23  business.  The transaction was an asset sale, and the liabilities

24  of defendant to plaintiff in this case remain with defendant,

25  according to the terms of the agreement.  (Id. at ¶ 3.)

26

27     [2]  John G. Chou is Vice President, Deputy General Counsel
   and Secretary of the AmerisourceBergen Corporation ("ABC"), the
28  parent company of defendant.  (Id. at ¶ 1.)

1    After the transaction, defendant's corporate name was

2 changed to Solana Beach, Inc.  The newly renamed defendant entity

3 remained then, and continues now, as a Delaware corporation and a

4 wholly-owned subsidiary of ABC.  (Id. at ¶ 4.)

5    ABC is one of the largest pharmaceutical companies in the

6 United States.  It is publicly traded and has a market

7 capitalization in excess of $9.5 billion.  "ABC has sufficient

8 resources to satisfy any judgment McKesson secures against Bridge

9 in this case."  (Id. at ¶ 5.)

10    Plaintiff alleges that following the sale of assets from

11 defendant to Cerner, Cerner has marketed, sold, and maintained

12 the "MedPoint System" in hospitals and other medical facilities

13 in the United States, including defendant's former customers.

14                               **STANDARD**

15    Federal Rule of Civil Procedure 25(c) provides:

16       In case of any transfer of interest, the action
         may be continued by or against the original party,
17       unless the court upon motion directs the person to
         whom the interest is transferred to be substituted in
18       the action or joined with the original party.

19 The determination of whether to join a party pursuant to Rule

20 25(c) is left to the discretion of the trial court.  "The most

21 significant feature of Rule 25(c) is that it does not require

22 that anything be done after an interest has been transferred.

23 The action may be continued by or against the original party, and

24 the judgment will be binding on his successor in interest even

25 though he is not named."  Wright & Miller, Federal Practice and

26 Procedure, Civ. 2d, § 1958.  However, the court, if it sees fit,

27 may allow the transferee to be substituted for the transferor or

28 if it wishes, it may retain the transferor as a party and order

1  that the transferee be made an additional party.  Any such "order

2  of joinder is merely a discretionary determination by the trial

3  court that the transferee's presence would facilitate the conduct

4  of the litigation."  Id.  Rule 25(c) is not designed to create

5  new relationships among the parties to a suit.  Rather, it is

6  "designed to allow the [original] action to continue unabated

7  when an interest in the lawsuit changes hands."  Matter of

8  Covington Grain Co., Inc., 638 F.2d 1362, 1364 (5th Cir. 1981).

9                              **ANALYSIS**

10      Plaintiff offers four reasons why it should be permitted to

11  join Cerner: (1) defendant is unable to satisfy a judgment

12  because Cerner carries on its former business; (2) a separate

13  lawsuit against Cerner deprives plaintiff of injunctive relief;

14  (3) joining Cerner will avoid a multiplicity of actions; and (4)

15  there is no prejudice to defendant or Cerner.  The court

16  addresses these reasons in turn.

17      First, plaintiff argues that without Cerner's joinder it

18  "will be left with an empty victory" because defendant is "now

19  nothing but a shell company."  (Mem. of P.&A., filed Feb. 21,

20  2006, at 2:18-28.)  As set forth above, ABC's Vice President,

21  Deputy General Counsel and Secretary, John Chou, declares that

22  defendant is not a shell company but rather, it remains a wholly-

23  owned subsidiary of ABC which is, through ABC, fully capable of

24  satisfying any judgment secured by plaintiff.  (Chou Decl., ¶ 4.)

25  Moreover, defendant did not transfer to Cerner its existing

26  liabilities.  (Id. at ¶ 3.)  In such a case, where defendant

27  "continue[s] in order to discharge its liabilities," a Rule 25(c)

28  joinder is not merited.  See Centillion Data Sys., Inc. v.

                                 4

1  American Mgmt. Sys., Inc., 200 F.R.D. 618, 620 (S.D. Ind. 2001)

2  (denying Rule 25(c) motion).  Plaintiff's reliance on Moody v.

3  Albermarle Paper Co., 50 F.R.D. 494, 498 (E.D. N.C. 2001) is

4  inapposite because the joinder there sought to prevent prejudice

5  to the plaintiff from a "corporate reshuffle," which has not

6  occurred here.

7       Moreover, Cerner is correct that plaintiff's allegations

8  against it appear to go well beyond a mere successor in interest

9  argument; plaintiff appears, at times, to argue that Cerner is an

10 independent infringer separate and apart from any acquired

11 liability.  As such, plaintiff's assertions misconstrue the scope

12 and nature of Rule 25(c).  See Matter of Covington Grain Co., 638

13 F.2d at 1364.

14      Second, plaintiff contends that it will be denied an

15 injunctive remedy if it must separately sue Cerner.  However,

16 plaintiff concedes that any injunctive relief in this case would

17 be extremely limited, if available at all, since the patent

18 expires August 15, 2006 and the estimated five-week jury trial is

19 not set to begin until July 25, 2006.  Under these circumstances,

20 this issue does not weigh in favor of joining Cerner.

21      Third, plaintiff asserts that joining Cerner would avoid a

22 separate lawsuit against Cerner.  However, as aptly stated by

23 defendant, this "is not an equity that cuts in [plaintiff's]

24 favor."  Plaintiff has known about the sale of the accused

25 "MedPoint System" to Cerner since the summer of 2005.  Yet,

26 plaintiff did not move the court to join Cerner until the final

27 pretrial conference, on March 10, 2006, some seven months later

28 and just one month before trial was set to begin on April 18,

1   2006.[3]  Courts have not condoned such belated attempts at joinder

2   under Rule 25(c), even if an additional lawsuit becomes

3   necessary.  DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, 2001

4   U.S. Dist. LEXIS 10985, *12, *19 (N.D. Ill. July 31, 2001) (Rule

5   25(c) motion denied, notwithstanding evidence that "Monsanto owns

6   or controls all [of the litigant's] assets and [the litigant] is

7   a mere shell" given "the late stage of the litigation"); EEOC v.

8   Pan Am. World Airways, Inc., 1987 U.S. Dist. LEXIS 15182, *8-*9

9   (N.D. Cal. Dec. 1, 1987) (Rule 25(c) motion denied because it is

10  "presented at a very late date" and the proposed new defendant

11  "will have no practical opportunity before trial to respond or to

12  move for summary judgment").[4]

13      Similarly here, this nearly four year old case is on the

14  verge of trial; the bifurcated court trial is set to commence May

15  2, 2006 and the jury trial, if necessary, shall commence on July

16  25, 2006.  Motions in limine are to be filed in just two weeks.

17  To add a party at this late juncture is not warranted,

18  particularly where that party, Cerner, intends, upon any joinder

19  order: (1) to request a continuance of the trial to allow it time

20  to retain counsel and review the existing, massive litigation

21

22

23

24      [3]    This trial date was later continued to May 2, 2006 and
    July 25, 2006 due to the court's calendar.

25      [4]    Novo Industri A/S v. Travenol Labs., Inc., 211 U.S.P.Q.
    379, 380 (N.D. Ill. 1981), relied on by plaintiff, is
26  distinguishable.  In Novo, the defendant sold the subject assets
    the same year the plaintiff filed suit, the plaintiff moved to
27  add the purchaser shortly thereafter, and the joinder occurred
    long before the close of discovery and some three years before
28  trial.

1 record in this case,[5] (2) to seek to reopen discovery so that it

2 may propound its own discovery requests, conduct its own

3 depositions, and develop its own theories and defenses, and (3)

4 to challenge the current claim construction, which Cerner argues

5 is not binding on it.  All of these actions, which may well be

6 merited, will require a significant investment of judicial time

7 and resources and will complicate and substantially lengthen this

8 case.  This delay and cost are alone a sufficient basis for the

9 court to exercise its discretion to deny plaintiff's motion.

10       For these same reasons, plaintiff's final argument is

11 unavailing.  Defendant and Cerner would be prejudiced by the late

12 addition of Cerner as a party to this action under the current

13 trial schedule.  To bring Cerner in under that schedule,

14 requiring it to file motions in limine in only two weeks is

15 unreasonable.  Inevitably, the trial in this action would need to

16 be continued and discovery opened on at least a limited basis

17 relating to Cerner.  This prejudices defendant, who would be

18 required to participate in that discovery and must await trial of

19 this already protracted litigation.  Defendant would also likely

20 need to revise its trial strategy to accommodate for the impact

21 of a new defendant.  Under these circumstances, the court must

22 deny plaintiff's motion.  Plaintiff can be made whole for any

23 alleged infringment by Cerner in a separately filed action.  See

24 35 U.S.C. § 286 (six-year limitations period applies to patent

25 cases).

26 _____

27       [5]     Said record includes many bankers' boxes of pleadings,
twenty-seven deposition transcripts, and more than 800,000 pages
of material produced in discovery by the parties and third
28 parties.  (Patino Decl., filed Mar. 1, 2006, ¶ 4.)

1

**CONCLUSION**

2      For the foregoing reasons, plaintiff's Rule 25(c) motion to

3  add Cerner as a defendant to this action is DENIED.[6]

4      IT IS SO ORDERED.

5  DATED: March 13, 2006.

6                                        /s/ Frank C. Damrell Jr.
                                         FRANK C. DAMRELL, Jr.
7                                        UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

_____

25      [6]      From the parties' submissions on the motion, it appears
   they agree that as between plaintiff and defendant a change of
26  the caption in this case is necessary to reflect the current
   names of the parties.  McKesson Information Solutions, Inc.
27  present name is McKesson Information Solutions, LLC and Bridge
   Medical, Inc.'s present name is Solana Beach, Inc.  Should the
28  parties seek to implement this change in the caption, they should
   file a stipulation and order with the court.