UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

McKESSON INFORMATION
SOLUTIONS, INC.,

         Plaintiff,

    v.

BRIDGE MEDICAL, INC.,

         Defendant.

NO. CIV. S-02-2669 FCD KJM

**AMENDED** MEMORANDUM AND ORDER[1]

----oo0oo----

At the April 11, 2006 hearing on the parties' motions in limine, the court took two of defendant Bridge Medical, Inc.'s ("Bridge") motions under submission: (1) Bridge's motion in limine #5 to exclude evidence and testimony regarding its advice of counsel (Docket #588) and (2) Bridge's motion in limine #6 to strike ten witnesses on plaintiff McKesson Information Solutions,

---

[1] The court issues the instant Amended Memorandum and Order to make minor stylistic changes to the original Memorandum and Order, filed April 19, 2006 (Docket #642).

Inc.'s ("McKesson") witness list (Docket #589).[2]  By this order, the court issues its decision on those motions.

First, regarding Bridge's motion in limine #5, Bridge has asserted the attorney-client privilege over an opinion of counsel it received regarding the '716 patent; Bridge does not intend to rely on said opinion to defend against McKesson's charge of willful infringement.  As such, by this motion, Bridge seeks to preclude any evidence or testimony regarding its assertion of the attorney-client privilege over its opinion of counsel.  In support, Bridge relies on Knorr-Bremse Systeme Fuer Nutzfahrzeuge Gmbh v. Dana Corp., 383 F.3d 1337 (Fed. Cir. 2004) wherein the Federal Circuit held, overturning prior precedent, that: "the assertion of attorney-client and/or work-product privilege and the withholding of the advice of counsel shall no longer entail an adverse inference as to the nature of the advice" that was given.  Id. at 1345.  The court similarly held with respect to the absence of an opinion of counsel that: "the failure to obtain an exclupatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion

---

[2] The court also took under submission Bridge's motion in limine #4 (Docket #587) to preclude McKesson from relying on the doctrine of equivalents.  However, as to this motion, the court permitted supplemental briefing by McKesson (with a response by Bridge) on the issue of whether McKesson's expert, Dr. Bims, could opine about the doctrine and if not, what evidence McKesson expected to offer on the doctrine.  To the extent Bridge brought the motion to preclude McKesson from relying on the doctrine based on the theory of prosecution history estoppel or McKesson's general failure to adequately disclose the theory in the course of discovery, the court orally DENIED the motion on those grounds.  Thus, the only issue for resolution, pursuant to the supplemental briefing, is whether McKesson should be otherwise precluded from reliance on the doctrine because it has no admissible evidence pertaining to it.

1 would have been unfavorable" had it been given.  Id. at 1346.

2     The parties agree that pursuant to Knorr, McKesson cannot
3 argue to the jury that it should infer that the opinion received
4 by Bridge was unfavorable.  However, the question before the
5 court is whether McKesson may nonetheless inform the jury that
6 Bridge asserted the attorney-client privilege over the opinion it
7 received regarding McKesson's patent.  The Federal Court in Knorr
8 expressly declined to decide whether the jury "can or should be
9 told whether or not counsel was consulted (albeit without any
10 inference as to the nature of the advice received) as part of the
11 totality of the circumstances relevant to the question of willful
12 infringement."  Id. at 1347.  Rather, the court held that
13 "[t]oday we resolve only the question of whether adverse
14 inferences of unfavorable opinions can be drawn, and hold they
15 can not."  Id.

16     Subsequent cases applying Knorr have held in the *context of*
17 an absence of an opinion of counsel, that the jury may consider
18 that fact in its willful infringement analysis (without
19 inferences about the nature of any potential opinion).  See e.g.
20 IMX, Inc. v. Lendingtree, LLC, 2006 WL 38918, *1 (D. Del. January
21 6, 2006) (holding that "fact that no opinion of counsel on the
22 issue of infringement was acquired by defendant may be considered
23 by the trier of fact in its willful infringement analysis");
24 Third Wave Technol. v. Strategene Corp., 405 F. Supp. 2d 991,
25 1016-17 (W.D. Wis. 2005) (holding that Knorr "did not say that it
26 was improper for a jury to infer from infringer's failure to
27 consult counsel that the infringer had no prior knowledge of its
28 opponent's patents or that it had not acted properly in other

3

respects").

These cases, however, are distinguishable on the facts because, here, Bridge consulted counsel and received an opinion but has chosen to assert the attorney-client privilege. The court finds that this distinction requires a different result than in Third Wave and IMX. Unlike those cases, any possible inference that the jury could draw from knowing that Bridge received an opinion of counsel, but refuses to reveal it under a claim of privilege, would run directly afoul of the rationale of Knorr. 383 F.3d at 1344 ("the inference that withheld opinions are adverse to the client's actions can distort the attorney-client relationship, in derogation of the foundations of that relationship"). The Federal Circuit explained in Knorr that there should be no "special rule affecting attorney-client relationships in patent cases" because

> [t]here should be no risk of liability in disclosures to and from counsel in patent matters; such risk can intrude upon full communication and ultimately the public interest in encouraging open and confident relationships between client and attorney.

Id.

While the court acknowledges that McKesson may well be prejudiced by the preclusion of evidence that Bridge obtained an opinion of counsel while asserting the attorney-client privilege, the court must also consider that *Bridge* would be prejudiced by the admission of such evidence while asserting the privilege. Ultimately, the court must balance the parties' respective interests, considering the dictates of Knorr and its emphasis on the sanctity of the privilege. "The attorney-client privilege

4

protects 'interests and relationships which . . . are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice.'" Id. (citation omitted.)  Indeed, how can the court honor the shield of the attorney-client privilege and then allow McKesson to use it as a sword to prove its case?

Were the court to permit such evidence, even with a cautionary instruction imposing Knorr's limitations (of no adverse inference), the jury would nevertheless be left to speculate why Bridge would not reveal its counsel's opinion.  It is inescapable that the jury would likely conclude that Bridge received an unfavorable opinion, otherwise Bridge would reveal it.  This is precisely the negative inference Knorr prohibits.

Accordingly, Bridge's motion in limine #5 is GRANTED.  McKesson is precluded, in all respects, from introducing evidence or testimony pertaining to Bridge's assertion of the attorney-client privilege over the opinion of counsel it received regarding the '716 patent.

Next, regarding Bridge's motion in limine #6, with the exception of witness George Putnam,[3] the subject witnesses, while not disclosed by McKesson in its Federal Rule of Civil Procedure, Rule 26 disclosures, were otherwise made known to Bridge during the discovery process. Fed. R. Civ. P. 26(e)(1).  Indeed, with the exception of Putnam, all of the challenged witnesses were identified in documents produced by both Bridge and McKesson

---

[3] McKesson conceded at oral argument that Putnam had not, in any manner, been previously disclosed during the course of discovery.  As such, the court orally granted Bridge's motion as to him.

5

during discovery.  Specifically, witness John Hummel was disclosed in document productions by Bridge; Bridge likewise disclosed witnesses Michael Meyers, Teresa McCasky, Kris Wanamaker, and Mark Gastright during discovery; witness Shirley Hughes, Wanamaker and Gastright are former employees of Bridge; and Hughes, Wanamaker, McCasky, Gastright and Billie Waldo were each disclosed and discussed in depositions taken of other witnesses.  Because these witnesses were otherwise made known to Bridge during the course of litigation, there is no prejudice to Bridge in allowing the witnesses' testimony at trial.  Fed. R. Civ. P. 37(c)(1).

At the hearing, Bridge requested that if the court denies the motion, it grant Bridge permission to depose these witnesses. The court finds no basis for such relief and accordingly denies Bridge's request.[4]  Discovery in this case, which was open for nearly two years, has long closed (on February 28, 2005).  The court recently denied McKesson's request to re-open discovery, a motion which Bridge vigorously opposed, and it likewise finds no basis to allow further discovery when requested by Bridge.  (Mem. & Order, filed March 13, 2006.)  This case is on the eve of trial, with the Phase I court trial to commence May 2, 2006; *all* motions in limine, pertaining to both the court trial and the Phase II jury trial, have been heard and will be resolved shortly.  The parties are fully engaged in trial preparation and at this late juncture, there are no grounds to delay that

---

[4] The court also notes that *Bridge* listed eight individuals as trial witnesses who it did not previously identify in its Rule 26 disclosures.

1  preparation by re-opening discovery.
2      As such, the court DENIES Bridge's motion in limine #6 with
3  respect to all witnesses, except George Putnam.
4      IT IS SO ORDERED.
5  DATED: June 2, 2006.

                                        /s/ Frank C. Damrell Jr.
                                        FRANK C. DAMRELL, Jr.
                                        UNITED STATES DISTRICT JUDGE

7