UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

McKESSON INFORMATION
SOLUTIONS INC.,

       Plaintiff,

   v.

BRIDGE MEDICAL, INC.,

       Defendant.

NO. CIV. S-02-2669 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendant Bridge Medical, Inc.'s ("Bridge") motion for attorney fees, pursuant to 35 U.S.C. § 285, in the amount of $4,044,581.13, plus post-judgment interest.[1]  Bridge moves for said fees on the grounds that (1) it is the prevailing party based on the court's June 13, 2006 order, finding plaintiff McKesson Information Solutions Inc.'s ("McKesson") '716 patent unenforceable for inequitable conduct,

---

[1]     Said amount excludes fees for time spent on litigating the instant motion; while Bridge requested fees for this work, it did not provide the court with an amount requested.

and (2) the court's finding of inequitable conduct renders this case "exceptional" within the meaning of § 285.  Consideration of the type of inequitable conduct in this case in conjunction with McKesson's bad faith pursuit of baseless claims and vexatious litigation tactics, Bridge argues, warrants the court exercise its discretion and award fees.  McKesson opposes the motion, arguing that this case is not "exceptional" within the meaning of § 285, and even if it were, an award of fees is not appropriate in this case where neither McKesson nor its predecessor-in-interest were involved in the inequitable conduct, and McKesson did not pursue baseless claims or engage in vexatious litigation tactics.

The court heard oral argument on the motion on August 18, 2006.  By this order, it now renders its decision on the motion.  While the court's order finding the '716 patent unenforceable for inequitable conduct amply supports a finding of an "exceptional" case, numerous factors, described below, militate against an award of fees in this case.  Thus, despite the court's finding that this case is "exceptional" within the meaning of § 285, the court declines to award fees to Bridge.

McKesson has been seriously punished in this case--its patent rights have been deemed unenforceable and its infringement claims against Bridge rendered moot thereby.  Under the factual circumstances of this case, the court cannot, in its discretion, *further* punish McKesson by an award of fees to Bridge.  Such an award would not serve the interests of justice, as in this case, the court finds that requiring each side to bear its own fees is a "fair allocation of the burdens of litigation as between

2

1  [Bridge the] winner and [McKesson the] loser."[2]  <u>S.C. Johnson &</u>

2  <u>Son, Inc. v. Carter-Wallace, Inc.</u>, 781 F.2d 198, 201 (Fed. Cir.

3  1986).

4  **BACKGROUND**

5      On December 13, 2002, McKesson sued Bridge, alleging

6  infringement of U.S. Patent No. 4,857,716 ("the '716 patent").

7  McKesson acquired the '716 patent as part of its acquisition of

8  HBOC of Atlanta in approximately 1988.  (Opp'n, filed Aug. 4,

9  2006, at 1.)  HBOC of Atlanta had acquired the patent during its

10 acquisition of CliniCom, Inc. ("CliniCom")--the original assignee

11 of the '716 patent.  (<u>Id.</u>)  During the mid-1980's, CliniCom hired

12 the law firm of Merchant & Gould P.C. ("M&G") to act as its

13 patent counsel for the prosecution of several patent applications

14 related to medication administration technology.  (<u>Id.</u> at 1-2.)

15 Then M&G attorney Michael Schumann ("Schumann") was the principal

16 attorney in charge of the CliniCom applications, including the

17 application that issued as the '716 patent.[3]  (<u>Id.</u> at 2.)

18     By way of affirmative defense to McKesson's complaint and

19 via its own counter-complaint for declaratory judgment, Bridge

20 asserted that the '716 patent is unenforceable due to inequitable

---

22 [2]    Because the court declines to award fees, it does not
consider whether the amount of fees claimed by Bridge is
23 reasonable.  The court notes, however, that McKesson did not
challenge the number of hours claimed by Bridge or
24 Bridge's requested rates, but rather argued that Bridge was
entitled only to those fees, if at all, relating to the work on
25 the inequitable conduct issue.  In that regard, McKesson argued
that Bridge should be entitled to no more than $669,057.25 in
26 fees.  Bridge responded that McKesson miscalculated the amount of
fees attributable to the inequitable conduct issue, claiming said
amount to be $995,984.71.

28 [3]    Some of these facts were not introduced at trial;
however, Bridge has not opposed the facts on the motion.

3

1  conduct by Schumann during the prosecution of the patent before

2  the United States Patent and Trademark Office ("PTO").

3      Ultimately, the lawsuit engendered more than three years of

4  hard fought litigation, which included: (1) McKesson's motion to

5  strike certain affirmative defenses and counterclaims of Bridge,

6  which the court granted in part (Docket # 37); (2) Bridge's

7  motion for summary judgment, brought prior to any discovery or

8  even Bridge's answer to the complaint, which the court denied

9  (Docket # 36); (3) Bridge's discovery motion to limit certain

10 discovery but in essence seeking a partial claim construction,

11 which while provided by the magistrate judge, was vacated

12 subsequently by this court (Docket # 128); (4) McKesson's motion

13 for a preliminary injunction, which the court denied (Docket

14 # 185); (5) multiple rounds of claim construction briefing and

15 hearing; (6) two years of fact discovery including third-party

16 discovery and twenty-seven depositions; (7) the exchange of

17 expert reports and seven expert depositions; (8) six summary

18 judgment motions--four filed by McKesson and two by Bridge, all

19 of which the court denied (Docket #s 532, 533, 535, 547);

20 (9) McKesson's motions to reopen discovery and add Cerner

21 Corporation as a party, which the court denied; (10) preparation

22 and a 4-day trial of the inequitable conduct issue; and

23 (11) preparation for a four to five week jury trial on

24 infringement and validity.

25     In May 2006, the court presided over the inequitable conduct

26 bench trial.  On June 13, 2006, the court issued Findings of Fact

27 and Conclusions of Law ("FF&CL") holding that inequitable conduct

28 occurred in the prosecution of the '716 patent, thereby finding

4

1   the patent unenforceable.  (FF&CL, filed June 13, 2006.)  The

2   court found that Schumann intentionally withheld three pieces of

3   highly material information from the PTO: (1) the prior art Baker

4   patent (id. at 20-34); (2) two rejections of substantially

5   similar claims in the co-pending '009 prosecution (id. at 34-45);

6   and (3) the allowance of substantially similar claims in the

7   co-pending '372 prosecution (id. at 45-48).  The court further

8   found that during his testimony, "Mr. Schumann offered nothing

9   other than bare denials of intent, combined with numerous excuses

10  that this court finds implausible and not credible."  (Id. at

11  50:7-10; see also Id. at 31:16-32:11 [Schumann's excuse regarding

12  the nondisclosure of Baker "strains credulity" and "is simply not

13  credible"]; Id. at 41:12-15 [explanation for nondisclosure of the

14  '009 rejections "is not accurate"]; Id. at 49:18-20 [Schumann

15  "failed to provide a credible explanation for his

16  nondisclosures."].)  In conducting the equitable weighing of

17  materiality and intent, the court recognized that "[a] pattern of

18  material nondisclosures, such as present here, weighs firmly in

19  favor of unenforceability."  (Id. at 48:27-28.)  The court

20  accordingly ruled that the inequitable conduct rendered the '716

21  patent unenforceable.  (Id. at 50:13-15.)

22                            **STANDARD**

23      Under the "American Rule," prevailing parties are not

24  normally entitled to attorney fees in federal court.  See

25  Machinery Corp. of America v. Gullfiber, 774 F.2d 467, 471 (Fed.

26  Cir. 1985).  One reason for having each party bear its own fees

27  is so that litigants are not "penalized for merely defending or

28  prosecuting a lawsuit."  Id.  The Patent Act provides a limited

exception to the "American Rule," allowing prevailing parties to recover reasonable attorney fees in "exceptional" cases. 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.")  The statute does not define an "exceptional cas[e]."

Courts have determined that whether to award attorney fees under § 285 is a two-step process.  First, the court must determine whether a case is exceptional.  Phonometrics, Inc. v. Westin Hotel Co., 350 F.3d 1242, 1245 (Fed. Cir. 2003).  It is the prevailing party's burden to demonstrate the exceptional nature of the case by clear and convincing evidence.  Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050 (Fed. Cir. 1992).  Second, if the court finds the case exceptional, it must decide, in its discretion, whether an award of fees is appropriate.  Phonometrics, 350 F.3d at 1245.

"The prevailing party may prove the existence of an exceptional case by showing:  inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement."  Epcon Gas Sys., Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002) (internal citations omitted).  However, a finding of inequitable conduct does not *require* a finding that the case is exceptional.  Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("it has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as 'exceptional.'")  Indeed, courts have recognized that "[t]o prove

6

a case exceptional imposes more stringent requirements than proof of inequitable conduct." <u>National Diamond Syndicate Inc. v. Flanders Diamond USA Inc.</u>, 67 U.S.P.Q.2d (BNA) 1671, 1676 (N.D. Ill. 2003).  In holding that inequitable conduct rises to the level of exceptional circumstances warranting attorney fees, courts have been influenced by, *inter alia*, the following factors: "(1) multiple material references were withheld from the PTO; (2) misleading statements and misrepresentations were made to the PTO as a result of the non-disclosure; (3) inequitable conduct formed the basis for the issuance of the patent; and (4) the applicants engaged in a 'program' of withholding their knowledge of material information from the PTO." <u>Evident Corp. v. Church & Dwight Co., Inc.</u>, 2003 U.S. Dist. LEXIS 26296, *7-8 (D. N.J. June 30, 2003), *aff'd,* 399 F.3d 1310 (Fed. Cir. 2005).

Nevertheless, even an exceptional case does not require in all circumstances the award of attorney fees.  <u>Consolidated Aluminum Corp. v. Foseco Int'l Ltd.</u>, 910 F.2d 804, 815 (Fed. Cir. 1990).  "In the context of fee awards to prevailing accused infringers, we have observed that § 285 is limited to circumstances in which it is necessary to prevent 'a gross injustice' to the accused infringer[.]"  <u>Forest Labs., Inc. v. Abbott Labs.</u>, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (internal citations omitted).  To determine whether attorney fees are warranted, a court should "weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser."  <u>S.C. Johnson</u>, 781 F.3d at 201.

7

1   The decision to award attorney fees, *vel non*, is
2   discretionary and permits the judge to weigh
    intangible as well as tangible factors: the degree
3   of culpability of the infringer, the closeness of the
    question, litigation behavior, and any other factors
    whereby fee shifting may serve as an instrument of
4   justice.

5   Superior Fireplace Co. v. Majestic Prods. Co., 270 F.3d 1358,

6   1378 (Fed. Cir. 2001) (internal quotations and citation omitted).

7   In the end, the court must decide, in its discretion, whether "it

8   would be 'grossly unjust' for the winner to bear the burden of

9   [its own] counsel fees [which] prevailing litigants normally

10  bear." Pollenex Corp. v. Sunbeam-Home Comfort, 835 F. Supp. 403,

11  404 (N.D. Ill. 1993); Rohm & Hass Co. v. Crystal Chem. Co., 763

12  F.2d 688, 691 (Fed. Cir. 1984).

13                          **ANALYSIS**

14      1.   **Is This An Exceptional Case?**

15  _____McKesson does not dispute that Bridge is the prevailing

16  party in this litigation based on the court's judgment finding

17  the '716 patent unenforceable for inequitable conduct.  The

18  parties do, however, vigorously dispute whether the court's

19  finding of inequitable conduct provides grounds for an

20  exceptional case determination.  On one hand, Bridge emphasizes

21  that the Federal Circuit has "repeatedly identified as

22  'exceptional' those cases involving inequitable conduct before

23  the Patent Office." Forest Labs., 339 F.3d at 1329.  To Bridge,

24  the court's inequitable conduct ruling *alone* provides

25  "compelling" grounds to deem this case exceptional under § 285.

26  McKesson, on the other hand, stresses that a finding of

27  inequitable conduct does not *require* a finding of an exceptional

28  case, see Gardco, 820 F.2d at 1215, and here, McKesson argues,

                                8

1   the facts supporting the court's finding are not "so egregious"

2   as to warrant the conclusion of exceptional circumstances.

3       The court agrees with Bridge.  First, an exceptional case

4   finding is warranted here given the court's previous finding of a

5   pattern of highly material nondisclosures.  (FF&CL at 48:27-28.)

6   "The number of material references intentionally withheld from

7   the PTO is relevant to finding a case exceptional . . . ."

8   Evident Corp., 2003 U.S. Dist. LEXIS 26296 at *10, *14 (premising

9   exceptional case finding in part on applicants' "engage[ment] in

10  a program to withhold material art from the PTO").  In this case,

11  the inequitable conduct "extended well beyond any mere isolated

12  lapse in disclosing a potential prior art reference."  Tarkett,

13  Inc. v. Congoleum Corp., 156 F.R.D. 608, 614 (E.D. Pa. 1994).

14  The court found that Schumann failed to disclose *multiple*

15  material references–the Baker patent, the '009 rejections and the

16  '372 notice of allowance.  Like in Tarkett, this conduct

17  "represented a general breakdown in the candor and good faith

18  with which [the patent prosecutor] was expected to deal with the

19  patent office."  Id.; see also Evident Corp., 2003 U.S. Dist.

20  LEXIS 26296 at *14 (Schumann, like the inventors and their

21  counsel in Evident Corp., "failed to disclose material prior art

22  to the PTO despite multiple opportunities," to do so).[4]

23      Moreover, with respect to each non-disclosure, the court

24  found the showings of materiality and intent to deceive "high."

25  (FF&CL at 50:5-6.)  Indeed, based on that conclusion, the court

26

27      [4]   See FF&CL at 29:11-30:10 (describing Schumann's
    multiple opportunities, after Examiner Lev brought the Baker
28  patent to his attention, to disclose the patent in the '716
    prosecution).

9

expressly noted that any one of the subject non-disclosures would support judgment of unenforceability.  (FF&CL at 50:2-5.) Significantly, Schumann's non-disclosures allowed him to make arguments to the PTO that he otherwise would have been unable to make had he disclosed the references.  (FF&CL at 28:16-30:10 [re: the Baker patent], 38:4-39:6 [re: the '009 rejctions].)  As to '372 allowance, the court found that disclosure may well have resulted in the rejection of the '716 application for double patenting.  (FF&CL at 45:13-46:11.)  As recognized by other courts, such facts strongly support a finding that the case is exceptional.  See e.g.; Agfa Corp. v. Creo Prods., Inc., 451 F.3d 1366, 1378 (Fed. Cir. 2006) (basing exceptional case finding, in part, on fact that undisclosed prior art was "inconsistent with Agfa's misleading statements to the examiner during prosecution"); Evident Corp., 2003 U.S. Dist. LEXIS 26296 at *13 (exceptional case finding warranted where non-disclosed prior art enabled applicants to make multiple subsequent misrepresentations regarding the prior art and non-disclosures directly led to the issuance of the patent); Tarkett, 156 F.R.D. at 614 (exceptional case finding based on facts that non-disclosed prior art anticipated at least some claims of the subject patent and misleading statements were made to the PTO about the non-disclosed prior art); Pollenex, 835 F. Supp. at 405 (finding important to the exceptional case determination that the failure to disclose two prior art references misled the PTO into believing that three or more references had to be combined to achieve the element combination in the claim).

1    Finally, the court found that Schumann failed to proffer a
2    credible explanation for his conduct.  "[S]chumann offered
3    nothing other than bare denials of intent, combined with numerous
4    excuses that this court finds implausible and not credible."
5    (FF&CL at 50:5-10.)  The court concluded that this was "not a
6    case of mistake or negligence" and that Schumann had acted in a
7    "wayward position contrary to law."  (FF&CL at 49:20-21, 49:26.)

8        McKesson argues that its defenses raised at trial preclude
9    an exceptional case finding.  These failed defenses, which the
10   court rejected and found lacked credibility, do not affect the
11   analysis.  Similar arguments were made in virtually every case
12   deemed exceptional.  <u>See e.g.</u> <u>Bruno v. Living Aids, Inc. v. Acorn</u>
13   <u>Mobility Servs., Ltd.</u>, 394 F.3d 1348, 1352 (Fed. Cir. 2005) (case
14   exceptional despite patentee's argument that it was not aware of
15   the prior art's materiality, and looking back in hindsight, it
16   believed the withheld prior art was immaterial and cumulative of
17   other disclosed art).

18       Furthermore, while the court acknowledges that McKesson
19   proffered some evidence of Schumann's good faith and candor
20   before the PTO, in that he disclosed numerous examples of prior
21   art and the co-pendency of the various CliniCom applications to
22   the '716 examiner, said evidence does not persuade the court that
23   this case is *not* exceptional.  The cases relied on by McKesson
24   are distinguishable.  In <u>Elk Corp. of Dallas v. GAF Bldg.</u>
25   <u>Materials</u>, 2000 U.S. Dist. LEXIS 2658, *6 (N.D. Tex. Mar. 7,
26   2000), the district court denied an award of fees, finding the
27   case not exceptional, in part, because the plaintiff patentee
28   disclosed other material prior art during the prosecution of the

patent-in-suit.  However, in its findings of fact and conclusions of law, the Elk Corp. court expressly found the inequitable conduct issue to be a "close question."  Id.  Ultimately, the court found that the plaintiff did not "disclose the most material prior art [and thus was found to have committed inequitable conduct]," but noted that the plaintiff was "reasonably entitled to rely on the arguments it advanced at trial."  Id. at *6-7.  Similarly, in Torin Corp. v. Philips Industries, Inc., 625 F. Supp. 1077, 1096-97 (S.D. Ohio 1985), the district court found the case, involving the non-disclsoure of only piece of prior art, not exceptional because the "questions of fact were close" and the inequitable conduct was proved "circumstantially from events occurring nearly twenty years before the suit was initiated."

Here, the *pattern* of deceit and the array of excuses offered by McKesson which this court found wholly lacking in credibility distinguish this case from Elk Corp. and Torin.  Nowhere in the court's FF&CL did it describe this case as a "close question," nor could the court's analysis of the facts here reasonably be given this interpretation.

Accordingly, based on the above, the court finds this case exceptional.

### 2.   Is An Award of Attorney Fees Appropriate?

While the court has concluded that Bridge succeeded in presenting evidence sufficient to meet its burden to prove inequitable conduct and the exceptional nature of this case, "that does not mean the case [is] 'open and shut'" regarding the award of fees.  Espeed, Inc. v. Brokertec USA, L.L.C., 417 F.

12

Supp. 2d 580, 600 (D. Del. 2006) (finding case exceptional but declining to award attorney fees where case was "hard fought"[5] with a split jury verdict finding infringement but deeming patent invalid and the plaintiff's counsel was professional in the conduct of the litigation); accord Modine Mfg. Co v. The Allen Group, Inc., 14 U.S.P.Q.2d 1210 (N.D. Cal. 1989) (finding case exceptional because of willful infringement but declining to award attorney fees).  Clearly, an exceptional case does not require, in all circumstances, the award of attorney fees. Consolidated Aluminum Corp., 910 F.2d at 815 (affirming district court's decision to deny attorney fees' request despite finding of inequitable conduct, stating that this ruling was in accord with the court's "repeated statement that not every case deemed 'exceptional' must result in a fee award").

     Here, a variety of factors militate against an award of fees to Bridge:

          **a.   McKesson's & CliniCom's Lack of Involvement in the Inequitable Conduct**

     First, the subject conduct occurred over 20 years ago and *neither* McKesson *nor* CliniCom were involved in the inequitable conduct.  Indeed, McKesson did not acquire any rights in the '716 patent until more than a decade after the inequitable conduct occurred.  In this case, unlike all the cases cited by both parties, there was simply no evidence that the plaintiff,

---

          [5]    Concurrently with the jury trial, the parties in Espeed tried the issues of inequitable conduct and laches to the court. By the instant opinion, the district court issued its post-trial findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a) and rendered its decision on an award of fees pursuant to § 285.  Id. at 584.

McKesson, or its predecessor, CliniCom, had any role in the
inequitable conduct.  In that regard, McKesson correctly argues
that the cases relied on by Bridge to support an award of fees
are distinguishable because in each of the cases a close nexus
existed between the plaintiff(s) in the patent action and the
party responsible for the inequitable conduct.  See e.g.
Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370,
1375, 1385 (Fed. Cir. 2001) (awarding attorney fees for
inequitable conduct committed directly by *the plaintiff* in
failing to disclose on-sale bar activities and suing on a
knowingly invalid patent); Vardon Golf Co. v. Karsten Mfg. Corp.,
2003 U.S. Dist. LEXIS 5072, *3-4 (N.D. Ill. Mar. 31, 2003)
(awarding fees for inequitable conduct based on *the plaintiff's*
failure to disclose known, material prior art); Ulead Sys., Inc.
v. Lex Computer & Mgmt. Corp., 151 F. Supp. 2d 1192, 1204 (C.D.
Cal. 2001) (awarding attorney fees for inequitable conduct
committed by *CEO and sole shareholder of the plaintiff*); Tarkett,
156 F.R.D. at 614 (awarding attorney fees for inequitable conduct
based on fraudulent acts of *the plaintiff* "carried out at the
highest and most responsible levels of the company"); Pollenex,
835 F. Supp. at 404-06 (awarding attorney fees for inequitable
conduct based on *the plaintiff's* intentional copying of prior art
devices and failure to disclose those prior art devices to the
PTO).

     Even Evident Corp. and Peabody Myers Corp. v. Vac-Con Inc.,
17 U.S.P.Q.2d 1817 (M.D. Fla. 1990), the two cases cited by
Bridge which did not involve inequitable conduct by the
plaintiffs themselves, are distinguishable because in both of

14

these cases, the plaintiffs' predecessors *were* involved in the conduct.   In <u>Evident Corp.</u>, the inventors and their counsel committed the inequitable conduct; the patent was later licensed to plaintiff Evident Corporation.   2003 U.S. Dist. LEXIS 26296 at *2.   In <u>Peabody</u>, while plaintiff Peabody was not involved in the subject conduct, its predecessor-in-interest was actively involved in the wrongdoing.   17 U.S.P.Q.2d at 1827-28.   Here, there was no evidence whatsoever that CliniCom played any role in the wrongdoing.

While McKesson's authorities, denying awards of fees, could also be distinguished on this basis (<u>see e.g.</u> <u>Elk Corp.</u>, <u>Torin</u>, <u>Gardco</u>, <u>Consolidated Aluminum</u>, and <u>Nat'l Diamond Syndicate</u>), the court finds that McKesson's and CliniCom's lack of involvement in the inequitable conduct weighs heavily against an award of fees in this case.   Said fact, contrary to Bridge's argument, is properly considered by the court.   While Bridge is correct that a patent holder may be charged with the consequences of inequitable conduct that occurred in the prosecution of a patent without regard to its own guilt or innocence,[6] the court may nonetheless consider McKesson's and CliniCom's lack of involvement in deciding whether to award fees.   The two issues are separate inquiries:   By law, McKesson may be held accountable for inequitable conduct and its patent deemed unenforceable, even

---

[6]    <u>See</u> <u>Stark v. Advanced Magnetics, Inc.</u>, 119 F.3d 1551, 1556 (Fed. Cir. 1997) ("One bad apple spoils the entire barrel. Misdeeds of co-inventors, or even a patent attorney can affect the property rights of an otherwise innocent individual."); <u>Peabody</u>, 17 U.S.P.Q.2d at 1817 (corporation that acquired interest in patent through merger found liable for inequitable conduct committed long before it acquired its interest in the patent and ordered to pay attorney fees).

though it was not a direct participant in the wrongdoing. However, that finding does not prevent the court from considering the level of culpability in deciding whether justice would be served by an award of fees.  See e.g. Bayer AG v. Housey Pharma., Inc., 2004 U.S. Dist. LEXIS 9633, *7 (D. Del. Jan. 29, 2004) (reducing amount of attorney fees in inequitable conduct case and noting that "the court has already granted substantial relief to Bayer in the form of a declaration of unenforceability"), *vacated by* 140 Fed. Appx. 948 (vacating award of fees because of remand of inequitable conduct determination for further findings).

The court's decision, here, is ultimately an equitable one and where there is no evidence that McKesson or its predecessor, CliniCom, were involved in the conduct, the court *should be* hesitant to award fees so as not to chill the pursuit of valid patent infringement claims.  See Revlon, Inc. v. Carson Prods. Co., 803 F.2d 676, 679 (Fed. Cir. 1986) (affirming denial of attorney fees and holding that "[a]ttorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party 'for merely defending or prosecuting a lawsuit'").  Indeed, there is no evidence here that McKesson had any actual and/or constructive knowledge, prior to this lawsuit, that the '716 patent was procured through inequitable conduct.  By law, McKesson's '716 patent was presumptively valid (35 U.S.C. § 282); McKesson apparently learned of the inequitable conduct charges through this lawsuit; once revealed by Bridge's answer and counter-complaint, McKesson gleaned the relevant facts from the prosecution history as Schumann had no present

16

recollection of the events in question.[7]  (FF&CL at 30:11-31:4.)
That McKesson may have become aware of facts that the court later
determined constituted inequitable conduct does not equate with
pursuit of inequitable conduct itself.  Forest Labs., 339 F.3d at
1329-30 (reversing award of attorney fees and holding that
knowledge of the events that led to a finding of equitable
estoppel could not be equated with bad faith knowledge that the
plaintiff would be equitably estopped from pursuing its claims).
Under these circumstances, the court agrees with McKesson that:

> An award of fees against McKesson would send a signal
> to patent assignees that even though they own a
> presumptively valid patent and have no knowledge of
> potential inequitable conduct when bringing suit, they
> run a risk that upon a good faith assertion of that
> patent against an infringer, they will be held liable
> for substantial attorney fees relating to inequitable
> conduct in which they played no role but vigorously
> contested at trial.

(Opp'n, filed Aug. 4, 2006, at 8:20-25.)  Such a rule of decision
is contrary to the federal policy behind the Patent Act.  Revlon,
803 F.2d at 679; Fleischmann Distilling Corp. v. Maier Brewing
Co., 386 U.S. 714, 718 (1967).

_____

[7]     Bridge makes much of the fact that McKesson and
Schumann were represented by the same counsel in this action;
Bridge argues that by the joint representation, McKesson should
be charged with knowledge of the fact of Schumann's inequitable
conduct.  However, Schumann had no recollection of the events at
issue, and thus, McKesson cannot be charged with any knowledge
supplied by Schumann.  Schumann conceded at deposition and trial
that he had no present recollection of the '716 patent
prosecution, and his testimony was based therefore on his custom
and practice and that of his firm at the time, as well as his
beliefs, *now,* looking back at the file history.  Ultimately, this
proved significant to the court's decision as Schumann was unable
to provide the court with a good faith, *contemporaneous*
explanation for what occurred.  This, however, is not a basis for
an award of fees to Bridge.

**b.  McKesson's Claims and Defenses were not Frivolous**

During this litigation, McKesson vigorously opposed the charge of inequitable conduct.  It successfully opposed, based largely on its experts' opinions, Bridge's motion for summary judgment on the issue.  This success is strong evidence that McKesson's positions on inequitable conduct were not frivolous. Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1370 (Fed. Cir. 2004) (affirming district court's denial of attorney fees to the prevailing defendant because "it is difficult to conceive of a 'baseless' claim that survived summary judgment).  In fact, after the court's denial of Bridge's motion for summary judgment, Bridge dropped allegations it previously advanced regarding the subject inequitable conduct (*e.g.*, Bridge did not pursue at trial allegations concerning six prior art references disclosed in the '441 patent application).  (Mem. & Order, filed Aug. 11, 2005, at 4:9-13.)  This is further evidence that McKesson's positions were not frivolous or taken in bad faith.  While, in the end, the court did not agree with McKesson's experts' opinions and with McKesson's arguments concerning the inferences to be drawn from the evidence presented at trial, this disagreement is not a sufficient basis to find that McKesson engaged in the "bad faith" pursuit of baseless claims, as asserted by Bridge.

**c.  McKesson did not Engage in Vexatious Litigation Tactics**

Bridge not only argues the baselessness of McKesson's claims but argues more generally that McKesson engaged in various "bad faith" and "vexatious" litigation tactics which warrant a grant of attorney fees to Bridge.  Whether the parties engaged in bad

faith or vexatious litigation tactics is often a consideration used by courts to determine the propriety of an award of fees. See e.g. Elk Corp., 2000 U.S. Dist. LEXIS 2658, *10 (holding that even had the court found the case exceptional, it would have denied fees due to *both* parties' bad faith litigation tactics); Torin, 625 F. Supp. at 1097 (denying fees, in part, because the plaintiff conducted litigation fairly and expeditiously by dismissing claims with no merit); Consolidated Aluminum, 910 F.2d at 814 (affirming denial of fees and noting that the defendant had been adjudicated a willful infringer, had engaged in delay tactics, had lost some of its claims, and the plaintiff prevailed on many of its infringement claims); Peabody, 17 U.S.P.Q. 2d at 1828 (awarding fees, in part, because plaintiff persisted in litigating the case despite the *obvious* invalidity of the patent); Vardon, 2003 U.S. Dist. LEXIS 5072, *4 (awarding fees, in part, because plaintiff had engaged in vexatious litigation tactics).

Here, Bridge argues that McKesson unnecessarily complicated this litigation by advancing arguments that directly contradicted (1) the facts as it knew or should have known them to be, (2) the law, (3) the court's rulings, and/or (4) its own witnesses' testimony.  Bridge gives several purported examples relating to each of the subject non-disclosures by Schumann.

First, regarding the Baker patent, Bridge argues that at summary judgment, McKesson refused to admit Baker disclosed a three-node wireless communication system employing a radio transmission link between a portable handheld unit and a fixed base station unit, *yet*, at trial, McKesson's expert Bims conceded

19

1   this fact.  Bridge also argues that Bims conceded, contrary to

2   McKesson's position on the motion for summary judgment, that the

3   Baker patent was material from a scientific standpoint.

4       Bridge's examples do not demonstrate bad faith litigation

5   tactics by McKesson.  McKesson provided *reasoned* and *supported*

6   responses to Bridge's arguments at summary judgment.  Indeed, the

7   court denied both parties' cross-motions for summary judgment on

8   inequitable conduct finding that based on the proffered,

9   competing expert testimony, triable issues of fact remained.

10  Specifically as to the Baker patent, McKesson disputed Bridge's

11  reading of the Baker patent's claim terms; as such, McKesson

12  argued Bridge's statement of "undisputed fact" regarding the

13  three-node system was overbroad in light of the actual wording of

14  the Baker patent itself, which McKesson quoted from in its

15  response to Bridge's "undisputed fact."  Moreover, at summary

16  judgment, McKesson disputed, through its expert, that the Baker

17  patent was material, at all, to the '716 prosecution; in

18  McKesson's view, Baker was cumulative of other art disclosed by

19  Schumann involving telecommunications.  This position was

20  supported by evidence and not wholly without merit.  Finally,

21  while Bims did concede at trial that the Baker patent was

22  material from a "scientific standpoint," his ultimate opinion was

23  that the patent was cumulative of other art disclosed, and thus

24  not material.

25      Next, Bridge argues regarding the '009 rejections, that at

26  summary judgment, McKesson improperly argued that there was no

27  evidence Schumann knew he was under a duty to disclose a

28  rejection from a co-pending case.  At his deposition taken prior

to the motions, Schumann testified he would disclose rejections
in co-pending cases if they were material.  Also, Bridge points
out that McKesson continued to argue at trial, despite the
court's ruling on the motions for summary judgment,[8] that <u>Dayco
Products, Inc. v. Total Containment, Inc.</u>, 329 F.3d 1358, 1368
(Fed. Cir. 2003), created new law.  Finally, Bridge argues
McKesson maintained at summary judgment that the '009 rejections
were immaterial because they related to a "handheld" instead of a
"system," but at trial, Schumann testified otherwise and the
court ultimately found the argument "not credible."

Again, Bridge's examples are not persuasive.  Schumann's
testimony regarding the obligation to disclose rejections in co-
pending cases must be read in full context.[9]  His response was
given after heavy "cross-examination" during that portion of the
deposition, and his answer could fairly be read as only an
admission that he understood *if* a rejection *was material*, he
would be obligated to disclose it.  He later testified that he
could not recall a single instance in which he had determined
that a rejection was material and should be disclosed.  That
testimony was consistent with his repeated statements that it was
his custom and practice and that of his firm at the time, to

_____

[8]     In its memorandum and order of August 11, 2005, denying
the parties' cross-motions for summary judgment on inequitable
conduct, the court found that <u>Dayco</u> did not create new law.
(Mem. & Order at 10 n.8.)

[9]     Schumann testified: "if it was deemed relevant and in
your duty to disclose, you would do that [disclose a material
rejection in a co-pending case].  I'm just saying that the
typical normal course is that it's rare that you would bring an
office action to the attention of the examiner in a co-pending
case."  (Schumann Dep., 127:24-128:4.)

*never* disclose office actions in co-pending cases because they believed they were under no duty to do so.  Moreover, McKesson, as an advocate for its position, understandably did not raise this testimony of Schumann; however, significantly, nor did Bridge raise the testimony in support of its motion (and presumably Bridge should have, if in its view, such testimony was persuasive).  Furthermore, there is nothing vexatious about McKesson's continued assertion of its position on <u>Dayco</u> (that <u>Dayco</u> created new disclosure obligations that did not apply to Schumann at the time of the '716 prosecution).  Bridge never objected during trial to McKesson's argument, and the court did raise the issue either.  In rendering its decision, the court found some of McKesson's arguments unpersuasive and some of its witnesses' testimony not credible.  However, such findings do not render McKesson's positions vexatious.  Nothing about McKesson's conduct in this case has exceeded the "normal bounds of aggressive advocacy."  <u>Cf.</u> <u>Elk Corp.</u>, 2000 U.S. Dist. LEXIS 2658 at *10.  This litigation was, as noted at the outset, hard fought by very capable, specialized and admirably professional counsel on both sides.

Finally, Bridge contends with respect to the '372 notice of allowance, that at summary judgment, McKesson took the position that Schumann had no duty to disclose a notice of allowance in a co-pending case, yet at trial, McKesson's expert Smegal testified that such a duty existed for a substantially similar claim in a co-pending application.

However, Smegal testified that <u>Dayco</u> created this duty, not that Schumann was under such a duty at the time of the '716

prosecution.  Moreover, Bridge's argument is unavailing as it
ignores McKesson's defense that the notice of allowance in any
event, did not need to be disclosed because it was for an
invention that was patentably distinct from the '716 invention.
While the court did not agree with McKesson's position regarding
the patentably distinct nature of the inventions, its position
was reasoned and supported by evidence, including expert
testimony, and thus cannot be said to have been taken in bad
faith.

     In sum, the court finds that Bridge has overstated its case
for "bad faith litigation tactics" on the part of McKesson.  This
case was an aggressively litigated case between two sophisticated
parties represented by well-qualified counsel, specialized in
patent law.  While McKesson may have, at times, "pushed the
envelope" in terms of its arguments or interpretations of the
evidence submitted, so too did Bridge.  McKesson vigorously
pressed its infringement claims in this action; claims which
survived Bridge's motion for summary judgment of non-infringement
and which were set to be tried before a jury.  That trial date,
of course, was vacated upon the court's decision finding the
patent unenforceable for inequitable conduct.  That finding,
however, is no reflection on the merits of McKesson's
infringement claims; indeed, those claims may well have succeeded
had McKesson held an enforceable patent.  As set forth above,
significantly, that patent was deemed not enforceable through no
conduct of McKesson's.  While the court ultimately did not agree
with McKesson's experts nor its interpretations of the evidence,
the court cannot find that McKesson's positions were frivolous or

1  taken in bad faith nor its litigation tactics vexatious.

2  **d.   Other Considerations**

3       In addition to the above, two other factors are noteworthy,
4  both of which further support the denial of an award of fees to
5  Bridge.  First, no order of this court has found that McKesson
6  engaged in improper conduct in any facet of this litigation.
7  Bridge raises, in passing, in its motion for fees, allegations of
8  discovery misconduct by McKesson.  However, while the parties had
9  numerous contentious discovery battles, McKesson was never once
10 found to have improperly withheld discovery, and in fact, several
11 times, Bridge was compelled by the court to provide discovery
12 responses and documents previously withheld.[10]  (<u>See e.g.</u> Docket
13 #s 215 [compelling Bridge to provide complete responses to
14 interrogatories], 236 [requiring Bridge to provide financial
15 information 45 days prior to disclosure of expert witnesses], 431
16 [compelling Bridge to provide supplemental response to
17 interrogatory].)  Second, this case was not a "David versus
18 Goliath" contest as insinuated by Bridge.  Bridge is not a small
19 competitor of McKesson; during the majority of this action,
20 Bridge was a wholly owned subsidiary of AmerisourceBergen
21 Corporation ("ABC"), one of the largest pharmaceutical services
22 companies in the United States.  (Chou Decl. [Docket #559],
23 ¶ 5.)  Also, during the pendency of this action, ABC sold
24 substantially all of Bridge's assets to another major competitor

25

26      [10]    In the same vein, it was Bridge that brought a summary
27 judgment motion before *any* discovery had begun, which the court
   summarily denied, and it was Bridge that surreptitiously sought
   and received a claim construction ruling via a *discovery motion,*
28 which ruling the court subsequently vacated.

of McKesson, Cerner Corporation.  (Id. at ¶ 2.)

Overall, upon consideration of the combination of above factors, the court cannot find that it would be "grossly unjust" for Bridge to bear its own counsel fees as prevailing litigants normally do.  Pollenex, 835 F. Supp. at 404; Rohm & Hass, 763 F.2d at 691.

**CONCLUSION**

For the foregoing reasons, the court DENIES Bridge's motion for attorney fees pursuant to § 285.  Despite the court's conclusion that Schumann committed inequitable conduct in procuring the '716 patent which rendered the patent unenforceable by McKesson in this infringement action, and the finding that this is an exceptional case, the court declines, in its discretion, to award attorney fees to Bridge.  In this case, requiring each side to bear its own fees is a fair allocation of the burdens of litigation as between the parties.

IT IS SO ORDERED.

DATED: September 6, 2006.

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE